(No. 18365.—Reversed and remanded.)
MINNIE A. LIPE, Appellee, *vs.* JOHN J. LIPE, Appellant.

*Opinion filed October 22, 1927.*

1. DIVORCE—*defense of condonation must be set up by plea or answer—burden of proof.* The defense of condonation in a divorce suit, to be available to the defendant, must be set up by plea or answer, and as it is an affirmative defense the burden of proof is on the defendant.

2. SAME—*cruelty committed after condonation is a revival of previous acts.* In all cases of condonation there is an express or implied condition that the party forgiven will not repeat the offense but will perform all marital duties the relation imposes, and each repetition of the offense after condonation is a revival of those which had been previously committed.

3. SAME—*what constitutes extreme cruelty.* Any willful misconduct of the husband which exposes the wife to bodily hazard and intolerable hardship and renders cohabitation unsafe is extreme cruelty, and while mere threats and words do not amount to extreme cruelty they are admissible to characterize the conduct of the person using them.

4. SAME—*the court may decree conveyance for alimony only where special circumstances exist.* Ordinarily a decree for alimony should not order a conveyance of the husband's real estate to the wife except under special circumstances which justify it, and where no contribution has been made from the wife's means to the acquisition of the property, the court is not justified, upon granting a divorce to her, in decreeing that the husband's land be conveyed to her, except in cases of some special equity arising out of the particular facts in the case.

5. SAME—*what special circumstances justify conveyance in lieu of alimony.* Where there are incumbrances on the property and other indebtedness of the husband making it difficult to procure a money payment of alimony, where there is a lack of market for the sale of the land at the time, and where the wife has contributed from her own money to the purchase of the property, the court is justified in requiring a conveyance of the fee of a part of the husband's real estate to the wife in lieu of alimony.

6. SAME—*court cannot decree that title of defendant be vested in complainant.* While the court may in certain circumstances order a conveyance of the husband's real estate to the wife in lieu of alimony, the decree in such case should not be that all the right, title and interest of the defendant be vested in the complainant, as

the decree cannot, of itself, convey the title but should order the conveyance to be made by the husband, and in case of his default should direct a conveyance by the master in chancery.

7. SAME—*when evidence need not be prescrved in decree.* A decree of divorce upon a verdict finding the defendant guilty of extreme and repeated cruelty is not insufficient in failing to make a finding of specific instances of cruelty or physical violence, as the verdict of the jury, which is a part of the record, is a sufficient compliance with the requirement that the decree must show on its face the facts which justify it.

APPEAL from the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

J. D. WILSON, and J. E. HOGAN, for appellant.

FRANK M. RAMEY, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Minnie A. Lipe filed a bill for separate maintenance against her husband, John J. Lipe, to the November term, 1926, of the circuit court of Montgomery county, which by amendment she later changed to a bill for a divorce on the ground of extreme and repeated cruelty; alleging, also, that the defendant was an able-bodied man, able to earn a large sum of money as a farmer; that he was the owner of personal property consisting chiefly of livestock and household goods, and of real estate consisting of a farm of the value of $20,000, subject to an incumbrance upon a part of the land, and one and one-half acres of land in the village of Irving, in Montgomery county, of the value of $2000. The bill represented that the complainant had no property except her interest in the property of Lipe as his wife, and besides the divorce prayed a decree of such part of his property or such sum of money as might be deemed necessary and proper for the complainant's support. The defendant answered, admitting the marriage but denying

all the allegations of cruelty and denied the allegations as to his financial ability. The court ordered the issue of fact to be tried by a jury, Has the defendant been guilty of extreme and repeated cruelty toward the complainant in manner and form as charged in the bill?—and the jury found the defendant guilty. A motion for a new trial was overruled and a decree of divorce was granted, the question of an allowance to the complainant being postponed until a later day, when there was another hearing and a decree that the acre and a half in Irving should be vested in the complainant, who should receive it in fee simple in lieu of alimony, maintenance or support on the part of the defendant, and the personal property of the complainant and the defendant was divided between them by the court. The defendant has appealed and argues that the evidence is insufficient to sustain the verdict of the jury.

The parties were married in February, 1890, and lived together over thirty-six years, until September, 1926, with the exception of brief separations during that time, when the appellee left the appellant on account of his cruel conduct. They had five children, of whom the oldest, Mrs. Edna Menzer, is thirty-four years old, and the youngest, Godfrey Lipe, twenty-three. The complainant testified to a number of instances of physical violence done to her by her husband during their marriage, constituting a course of cruel conduct extending through the greater part of their married life. On one occasion, as she testified, he threw her against a chair, cursed her and ordered her out of the house. Another time he struck her with a buggy whip. Again he threw his shoe at her, striking her in the stomach, causing her to be very sick for three or four days and resulting in a miscarriage, but he refused to permit her to call a physician. Another time he threw her across a chair and struck her, hurting her badly, and another time hit her with a shovel. In July, 1926, he struck her with his fist in the face. He used abusive language to her, and threat-

ened her at times when he committed no acts of physical violence. She continued to live with him, though she left him on three occasions previous to the last for short periods. She returned to him each time because of his promise to do better. The last promise was made on February 12, 1926, to the attorneys of the parties, and it was in July of that year that he struck her with his fist in the face. On August 25 they had a controversy over sowing wheat. She wanted some sowed and he did not. He cursed and used vile and abusive language to her.

Much of the evidence of the complainant was uncorroborated. It was corroborated in its general nature by the daughter Mrs. Menzer and the son Godfrey, and to a less degree by other witnesses, relatives and neighbors. The defendant denied every detail of the testimony against him. He makes no complaint of any instruction given or refused, or of any evidence received, or offered and not received. The verdict of the jury was in accordance with the evidence.

The appellant argues that by continuing to live with him after the various acts of cruelty described in the evidence the appellee condoned the cruelty and cannot demand a divorce upon the ground of extreme and repeated cruelty. This defense was not alleged in the pleadings. The defense of condonation in a divorce suit, to be available to the defendant, must be set up by plea or answer. It is an affirmative defense and the burden of proof is on the defendant. (*Klekamp* v. *Klekamp,* 275 Ill. 98.) The court would have been warranted in not allowing the appellant to make this defense without having pleaded it or averred it in his answer. In all cases of condonation there is an express or implied condition that the party forgiven will not repeat the offense but will perform all marital duties the relation imposes. (*Kennedy* v. *Kennedy,* 87 Ill. 250; *Teal* v. *Teal,* 324 id. 207.) The appellee's continuance of marital relations with the appellant after his various acts of cruelty was in each case subject to the implied con-

dition that the offenses would not be repeated. Each repetition of the offense was a revival of those which had been previously committed. The last condonation which is claimed was on February 12, 1926, when the appellant again promised to do better, but in July he again struck her with his fist in the face, and on August 25 occurred the controversy about the wheat, when he cursed her, with vile and abusive language. While mere threats and words do not amount to extreme cruelty, they are admissible in evidence to characterize the conduct of the person using them. The same act is not the same thing under all circumstances and to all persons. Any willful misconduct of the husband which exposes the wife to bodily hazard and intolerable hardship and renders cohabitation unsafe is extreme cruelty. "Whenever force and violence, preceded by deliberate insult and abuse, have been once wantonly and without provocation used, the wife can hardly be considered safe." (*Poor* v. *Poor,* 8 N. H. 307.) Soon after the quarrel of August 25 the appellee left the appellant. His abusive language and cursing of her following the beating of July 26 were sufficient to show that he had no more intention of keeping his last promise than those which he had previously made and broken. They revived the previous offenses and justified the appellee's leaving, even after the delay of a few days. She was neither obliged to take her departure on the instant nor to delay until she was again knocked down or beaten with a buggy whip.

The appellant objects to the part of the decree which awards the property in Irving to the appellee, and insists that the allegations of the bill and the evidence do not warrant a decree vesting the fee of the appellant's real estate in the appellee. Ordinarily a decree for alimony should not vest the fee of the husband's real estate in the wife except under special circumstances which justify it. (*Ross* v. *Ross,* 78 Ill. 402; *Robbins* v. *Robbins,* 101 id. 416; *Shaw* v. *Shaw,* 114 id. 586.) Where no contribution has

been made from the wife's means to the acquisition of the property the court would not be justified, upon granting a divorce to her, in decreeing the title of the husband's land to her except in cases of some special equity arising out of the particular facts in the case. (*Wilson* v. *Wilson,* 102 Ill. 297; *Champion* v. *Myers,* 207 id. 308.) Where such special equity does exist the power of the court to render such a decree is well established. (*Bergen* v. *Bergen,* 22 Ill. 187; *Armstrong* v. *Armstrong,* 35 id. 109; *Meighen* v. *Meighen,* 307 id. 306.) In this case the appellee testified that she put in the land $4550 on different dates, beginning with $1000 thirty years ago and $2770 eighteen years ago—right after her mother died; that the land was worth $100 an acre. The appellant offered no evidence as to the value of the farm but alleged in his answer that it was subject to two mortgages—one for $8200 and the other for $2000. He testified that besides the mortgages he owed about $4200 of other debts, of which three notes are signed by Mrs. Lipe,—one for $800, one for $159 and one for $208,—and she also signed the $2000 mortgage note. The evidence showed that the appellee was without money, and the appellant, in view of the mortgages on his land, the lack of market for its sale at the time, and his other indebtedness, was not in a condition to provide money for the support and maintenance of the appellee, and in view of the further fact that she has contributed from her own money more than $4000 to the purchase of the property there is a special equity which under the circumstances of the case justified the court in requiring a conveyance of the fee of a part of the husband's real estate to her. With the incumbrances on the property and his other indebtedness it would have been difficult, if not impossible, for the appellant to procure the money for the payment of alimony if a decree had been entered for periodical payments which had been made a lien on the property, and a sale of the property would have been more dif-

ficult. It was therefore proper for the court to require a
conveyance of a reasonable portion of the appellant's real
estate in lieu of alimony, keeping the farm, which was
his means of acquiring money, free from any lien for his
wife's support.

The allegation of the bill is that the farm is worth
$20,000. The only evidence in the record is that it is worth
$100 an acre, which would be $25,000. The mortgages
amount to $10,300, leaving an equity of about $15,000.
The appellant owes $4200 besides. The bill alleges that the
property decreed to the wife is of the value of $2000. The
answer denies that it is of so great value, and there is no
evidence on the question. In this condition of the record
it is fair to assume that the property is not worth more
than $2000, and it is not, therefore, an undue proportion
of the appellant's property to be applied to the support of
his wife.

The decree is not erroneous in awarding the land to
the appellee, but there is a formal error in decreeing that
all the right, title and interest of the defendant, John J.
Lipe, shall be vested in the complainant. The court of
chancery, in administering the system of equitable remedies
within its jurisdiction, in the absence of any statute, acted
upon the principle that its remedies and decrees operate
upon the parties *in personam* and not upon the thing itself
*in rem*. Its decree spoke in terms of personal command
to the defendant, but its directions could be carried into
effect only by his personal act. While declaring an equi-
table estate, interest or right of the plaintiff to exist, a de-
cree could not operate, by its own intrinsic force, to vest
the plaintiff with the legal estate, interest or right to which
she was pronounced entitled. The decree was not itself a
legal title, nor could it either directly or indirectly transfer
the title from the defendant to the plaintiff. Though it
might declare that the plaintiff was in equity entitled to the
ownership of certain land of which the defendant held the

legal title, the latter's voluntary act was necessary to carry a decree into execution, and if he refused to convey, the method of compelling his obedience was by attachment for contempt. The decree of itself did not convey the title. (1 Pomeroy's Eq. Jur. sec. 428; *Greaves* v. *Tofield,* L. R. 14 Ch. Div. 563.) The practice, in the absence of a statute, is stated in *Silver* v. *Ladd,* 7 Wall. 219: "The most usual mode under the chancery practice, unaffected by statute, is to compel the defendant, in person, to convey to plaintiff, or to have such conveyance made in his name by a commissioner appointed by the court for that purpose. In some of the States it is provided by statute that a decree of the court shall operate as a conveyance where it is so expressed in the decree, and additional relief may be granted by giving possession of the land to plaintiff, quieting his title as against defendants and enjoining them from asserting theirs." We have no statute in this State providing that the decree of a court of chancery may operate as a conveyance of an estate, and the court has no power to vest the title in the appellee.

The jury having returned a verdict finding the defendant guilty of extreme and repeated cruelty, in manner and form as charged in the bill, the appellant made a motion for a new trial, which the court overruled and thereupon entered a decree dissolving the marriage between the appellant and the appellee, in which no finding of specific acts of cruelty or of physical violence was made, and the appellant contends that the decree is insufficient because of such absence of finding of specific instances of cruelty. The verdict of the jury, which is a part of the record, is a sufficient compliance with the requirement that the decree must show on its face the facts which justified it. *Thatcher* v. *Thatcher,* 17 Ill. 66; *Berg* v. *Berg,* 223 id. 209.

The decree is reversed and the cause remanded, with directions to the court to re-enter the decree with a modification requiring the appellant to convey to his wife in

fee the property awarded to her, and in case of his default that the master in chancery make the conveyance. The appellant will pay three-fourths of the costs and the appellee one-fourth.

*Reversed and remanded, with directions.*